IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KARIN KIRKSEY ZANDER,           )
                                )
             Plaintiff,         )
                                )
      v.                        )          1:13CV1141
                                )
SAXON MORTGAGE SERVICE,         )
INC., and OCWEN FINANCIAL       )
CORPORATION,                    )
                                )
             Defendants.        )


**<u>MEMORANDUM OPINION AND ORDER</u>**

**OSTEEN, JR., District Judge**

        Plaintiff Karin Kirksey Zander ("Plaintiff"), proceeding
<u>pro se</u>, has asserted several claims under the Fair Credit
Reporting Act ("FCRA"), 15 U.S.C. § 1681 <u>et seq.</u>, and various
claims under North Carolina state law. Presently before this
court is a motion to dismiss for failure to state a claim
pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by
Defendant Ocwen Financial Corporation ("Ocwen"). (Doc. 8.)
Defendant Saxon Mortgage Service, Inc. ("Saxon") (collectively
with Ocwen, "Defendants") has filed a motion to join, adopt, and
incorporate Defendant Ocwen's motion to dismiss. (Doc. 15.)
Plaintiff has responded in opposition (Doc. 18), and Defendants
have separately replied (Docs. 19, 21). This motion is now ripe
for adjudication, and, for the reasons that follow, Defendants'

motion will be granted with respect to Plaintiff's FCRA claims.
Because the FCRA claims were the sole basis for this court's
original jurisdiction, this court will decline to exercise
supplemental jurisdiction over Plaintiff's remaining state law
claims pursuant to 28 U.S.C. § 1367(c)(3).

## I.   BACKGROUND

The following facts are taken as alleged in Plaintiff's
Complaint.

In 2006, Plaintiff held a residential mortgage on her home
serviced by Ocwen. (Verified Complaint ("Compl.") (Doc. 5) ¶ 9.)
In May 2006, Plaintiff refinanced her mortgage through Saxon,
extinguishing the original mortgage serviced by Ocwen. (Id.) On
or about July 19, 2007, Plaintiff notified Saxon that
Plaintiff's residence (on which Saxon held the refinanced
mortgage) was in escrow, had passed inspection, and had
pre-approved buyers. (Id.) The accepted purchase amount was
sufficient to cover the entire outstanding amount of the
mortgage. (Id.) Plaintiff further informed Saxon that the
closing date was set for August 15, 2007. (Id.) Several days
after the July notification, Saxon initiated a "Special
Proceedings action" in Wake County Superior Court. (Id.) On or
about August 20, 2007, Saxon voluntarily dismissed the action
"following it's [sic] receipt of payment for the full amount

- 2 -

listed as due to pay off plaintiff's home mortgage loan <u>in</u> <u>full</u>." (<u>Id.</u>) Plaintiff claims that the voluntarily dismissal of the "special proceeding" in August 2007 was Plaintiff's last direct involvement with Saxon.[1] (<u>See</u> <u>id.</u> ¶ 12.)

In April 2013, over five years after the foreclosure was instituted and discontinued, Plaintiff applied for a home loan to pursue an opportunity to purchase a foreclosed home. (<u>Id.</u>

---

[1] Plaintiff does not directly state that the "special proceeding" at issue here was a foreclosure proceeding. This court, however, infers the obvious – that a foreclosure proceeding was instituted and subsequently dismissed when the payoff in full was made. As discussed <u>infra</u> Section II, because the pleadings have closed, this court will convert Defendants' motion into a Rule 12(c) motion for judgment on the pleadings. Under a Rule 12(c) motion for judgment on the pleadings, "the well-pled factual allegations in the complaint are taken as true, whereas those of the answer are taken as true only to the extent that they have not been denied or do not conflict with those in the complaint." <u>Shelton v. Safeway, Inc.</u>, Civil No. PJM 10-2358, 2011 WL 1869827, at *3 (D. Md. May 16, 2011); <u>see</u> <u>Jadoff v. Gleason</u>, 140 F.R.D. 330, 331 (M.D.N.C. 1991). Here, Saxon's answer expressly admits that "in August 2007 it commenced foreclosure proceedings in Wake County against Plaintiff." (Answer (Doc. 17) ¶ 9.) This fact is neither denied by Plaintiff nor controverted by Plaintiff's Complaint. Lastly, under North Carolina statute and case law, special proceedings are frequently the mechanisms utilized to bring foreclosure actions. <u>See</u> <u>In re Vogler Realty, Inc.</u>, 365 N.C. 389, 400, 722 S.E.2d 459, 467 (2012); <u>Dobson v. Substitute Tr. Servs., Inc.</u>, 212 N.C. App. 45, 46, 711 S.E.2d 728, 729, <u>aff'd,</u> 365 N.C. 304, 716 S.E.2d 849 (2011); <u>United Carolina Bank v. Tucker</u>, 99 N.C. App. 95, 98, 392 S.E.2d 410, 411 (1990); <u>Phil Mech. Const. Co., Inc. v. Haywood</u>, 72 N.C. App. 318, 320-21, 325 S.E.2d 1, 2-3 (1985); <u>see also</u> N.C. Gen. Stat. § 45-21.16(g). Even assuming the "special proceeding" was something other than a foreclosure proceeding, it does not alter the final conclusions reached herein.

¶ 13.) Her loan application was denied by Bank of America and
Wells Fargo Bank because "Saxon had reported incorrect
information to one or more of the major credit bureaus, and
allowed the report to remain in place as of April 2013 . . . ."
(Id. ¶ 14.) Specifically, Plaintiff alleges that Saxon "caused a
foreclosure to be listed" on Plaintiff's credit report. (Id.) In
2012, Ocwen purchased Saxon and now the two corporations are
alleged to have "complete unity of interest and ownership so
that separate identities between the defendants do not exist."
(Id. ¶ 10.)

    In May 2013, Plaintiff filed a formal written dispute
"with each of the three major credit bureaus contesting the
derogatory information furnished by Saxon." (Id. ¶ 15.) Over the
next several months, each reporting bureau responded "that Saxon
had allegedly investigated and verified its claim so that the
derogatory information would remain on plaintiff's credit
reports." (Id. ¶ 18.) In August 2013, Plaintiff wrote directly
to Saxon to "validate and verify" the foreclosure proceeding
furnished by Saxon and appearing on Plaintiff's credit reports.
(Id. ¶ 19.) Over 180 days later, Saxon had still not responded
to Plaintiff's direct written request for information concerning
the foreclosure proceeding appearing on her credit report. (Id.)

## II.  **LEGAL STANDARD**

Defendants have moved to dismiss Plaintiff's FCRA claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the pleadings have subsequently closed and this court finds that consideration of the Answer clarifies ambiguities otherwise present in the pro se Complaint, this court will sua sponte convert Defendants' motion into a Rule 12(c) motion for judgment on the pleadings.  See Pullen-Walker v. Roosevelt Univ., No. 09 CV 5426, 2010 WL 652986, at *2 (N.D. Ill. Feb. 19, 2010), vacated on other grounds, 405 F. App'x 46 (7th Cir. 2010). "A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is analyzed under the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011) (citing Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002)). In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the trial court must accept factual allegations as true. E.g., Erickson v. Pardus, 551 U.S. 89, 91 (2007). A motion under Rule 12(b)(6) is proper when the complaint's factual allegations fail as a matter of law to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, a court is not required to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." Id.

"Unlike on a Rule 12(b)(6) motion, however, on a Rule 12(c) motion the court may consider the Answer as well." Alexander, 801 F. Supp. 2d at 433. "[T]he fact allegations of the complaint are taken as true, but those of the answer are taken as true only where and to the extent they have not been denied or do not conflict with the complaint." Jadoff v. Gleason, 140 F.R.D. 330, 331 (M.D.N.C. 1991).

Courts testing the sufficiency of a complaint with a motion under Rule 12(b)(6) or 12(c) generally cannot reach the legal adequacy of an affirmative defense, such as an affirmative assertion that a claim is barred by the statute of limitations. Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." Id.; see Suarez Corp. Indus. v. McGraw, 125 F.3d 222, 229 (4th Cir. 1997). In other words, in order to grant a motion to dismiss alleging an affirmative

defense, the complaint must be self-defeating. See <u>Goodman</u>, 494 F.3d at 464 ("This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] <u>on the face of the complaint</u>.'" (alterations in original) (quoting <u>Richmond, Fredericksburg & Potomac R.R. v. Forst</u>, 4 F.3d 244, 250 (4th Cir. 1993))).

**III. <u>ANALYSIS</u>**

Plaintiff brings four claims under the FCRA: (1) willful failure to validate under 15 U.S.C. § 1681n; (2) willful misrepresentation under 15 U.S.C. § 1681n; (3) negligent failure to accurately report credit history information under 15 U.S.C. § 1681o; and (4) negligent failure to validate under 15 U.S.C. § 1681o. (Compl. (Doc. 5) at 7-10.)

**A. <u>Statute of Limitations</u>**

Defendants first argue that Plaintiff's asserted causes of action under the FRCA are time-barred by the applicable statute of limitations because they are based on the 2007 foreclosure proceeding. The FCRA's statute of limitations reads:

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of --
>
>> (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or

(2) 5 years after the date on which the violation
            that is the basis for such liability occurs.

15 U.S.C. § 1681p.

        In her Complaint, Plaintiff asserts two causes of action
under the FCRA – willful and negligent failure to validate –
stemming from Defendants' failure to timely respond to
Plaintiff's written request for Saxon to validate its furnishing
of Plaintiff's prior foreclosure. Contrary to Defendants'
assertion, the "violation" serving as the "basis for liability"
is the 2013 failure to respond, not the 2007 foreclosure
proceeding. Because these violations were explicitly alleged to
have occurred in 2013, the statute of limitations does not bar
them in the present suit.

        Defendants also contend that the two claims based on
misrepresenting the foreclosure proceeding are time-barred. The
Complaint alleges that the foreclosure proceeding was initiated
against Plaintiff in August 2007. Defendants assert that because
Saxon was "actively pursuing collection of a debt . . . . any
information regarding the foreclosure would have been initially
reported no later than August of 2007, nearly six (6) years and
three months before Plaintiff brought her FCRA action." (Def.'s
Mem. in Supp. of Mot. to Dismiss (Doc. 9) at 6.) Defendants'
argument rests on the assumption that the foreclosure proceeding
occurred simultaneously with Saxon's reporting of such

proceeding to the consumer reporting agencies ("CRAs"). This court is not, however, entitled to draw such assumptions in favor of Defendants at this stage of the litigation. Cf. Eddins v. Cenlar FSB, 964 F. Supp. 2d 843, 848-49 (W.D. Ky. 2013) (finding that a statute of limitations defense could not be resolved at motion to dismiss stage due to factual dispute over when a furnisher was notified of a disputed item on a credit report thereby triggering § 1681p's timing provisions). Here, the face of the Complaint is silent as to when the foreclosure proceeding was first reported by Saxon to the CRAs. Drawing reasonable inferences in favor of Plaintiff, it is entirely plausible that Saxon intentionally or unintentionally delayed reporting the foreclosure proceeding. Without any allegations specifying when the foreclosure proceeding was first reported (i.e., when the alleged violation first occurred), this court cannot determine from the face of the Complaint the date the statute of limitations was initially triggered. As such, this court cannot conclude that the five-year statute of limitations has run for Plaintiff's willful and negligent misrepresentation claims.

**B.  Private Right of Action**

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and

protect consumer privacy." <u>Safeco Ins. Co. of Am. v. Burr</u>, 551
U.S. 47, 52 (2007). "To this end, the FCRA imposes certain
duties and procedures on various entities operating in the
consumer reporting industry . . . ." <u>McPhail v. Wells Fargo
Dealer Servs.</u>, No. 5:13-CV-231-BO, 2013 WL 3545201, at *3
(E.D.N.C. July 11, 2013). Specifically, "the FCRA places
distinct obligations on three types of entities: consumer
reporting agencies, users of consumer reports, and furnishers of
information to consumer reporting agencies." <u>Akalwadi v. Risk
Mgmt. Alts., Inc.</u>, 336 F. Supp. 2d 492, 508 (D. Md. 2004)
(internal quotation marks omitted). Here, the parties agree that
Saxon is a furnisher of credit information. Consequently,
§ 1681s-2 is the applicable FCRA section setting forth the
responsibilities of furnishers of credit information. <u>See</u>
<u>Akalwadi</u>, 336 F. Supp. 2d at 508-09.

Section 1681s-2 divides a furnisher's duties into two
categories. First, "Section 1681s-2(a) enumerates the essential
duties in furnishing accurate and complete information and
includes other similar duties." <u>McPhail</u>, 2013 WL 3545201, at *3.
Second, "Section 1681s-2(b) enumerates the obligations of a
furnisher if a consumer disputes the accuracy of information
that the furnisher reported to the CRA." <u>Id.</u>

As a preliminary matter, § 1681s-2(a) does not create a private right of action. The FCRA confers enforcement of § 1681s-2(a) exclusively to "Federal agencies and officials and the State officials identified in [FCRA] section 1681s . . . ." 15 U.S.C. § 1681s-2(d). Courts have unanimously found that this statutory scheme precludes private suits under § 1681s-2(a). E.g., SimmsParris v. Countrywide Fin. Corp., 652 F.3d 355, 358 (3d Cir. 2011)("[Sections 1681o and 1681n] however, cannot be used by a private individual to assert a claim for a violation of § 1681s-2(a), as such claims are available only to the Government."); McPhail, 2013 WL 3545201, at *4 ("[C]onsumers are barred from bringing private suits for violations by furnishers of the duties enumerated in § 1681s-2(a)."); Banks v. Stoneybrook Apartment, No. 1:99CV00561, 2000 WL 1682979, at *2 (M.D.N.C. June 1, 2000), aff'd, 232 F.3d 888 (4th Cir. 2000)("The FCRA limits the enforcement of violations under section 1681s-2(a) to certain federal and state officers. There is no private right of action for individuals." (citation omitted)).

### C.  Liability under § 1681s-2(b)

Unlike § 1681s-2(a), however, § 1681s-2(b) permits private suits for violations of its provisions. Section 1681s-2(b), governing the duties of furnishers to investigate consumer disputes, provides in relevant part that:

After receiving notice pursuant to section
1681i(a)(2), [requiring a consumer reporting agency to
notify the furnisher within five days of receiving a
customer dispute] . . . the [furnisher] shall --

> (A) conduct an investigation with respect to the
> disputed information;
>
> (B) review all relevant information provided by
> the consumer reporting agency . . . ;
>
> (C) report the results of the investigation to
> the consumer reporting agency;
>
> (D) if the investigation finds that the
> information is incomplete or inaccurate, report
> those results to all other consumer reporting
> agencies to which the [furnisher has] furnished
> the information . . . ; and
>
> (E) if an item of information disputed by a
> consumer is found to be inaccurate or incomplete
> or cannot be verified after any reinvestigation
> under paragraph (1), for purposes of reporting to
> a consumer reporting agency only, as appropriate,
> based on the results of the reinvestigation
> promptly –
>
> > (i) modify that item of information;
> >
> > (ii) delete that item of information; or
> >
> > (iii) permanently block the reporting of
> > that item of information.

15 U.S.C. § 1681s-2(b). Distilling these statutory provisions,

to state a claim under § 1681s-2(b) a plaintiff must establish

"(1) that he or she notified the consumer reporting agency of

the disputed information, (2) that the consumer reporting agency

notified the defendant furnisher of the dispute, and (3) that

the furnisher then failed to investigate and modify the

inaccurate information." <u>Ausar-El v. Barclay Bank Delaware</u>, Civil No. PJM 12-0082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012). In other words, "§ 1681s–2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a <u>reasonable investigation</u> of their records to determine whether the disputed information can be verified." <u>Johnson v. MBNA Am. Bank, NA</u>, 357 F.3d 426, 431 (4th Cir. 2004)(emphasis added).

Here, Plaintiff alleges that Saxon initiated a foreclosure proceeding against Plaintiff, which Saxon voluntarily dismissed after being paid in full. (Compl. (Doc. 5) ¶ 9.) Plaintiff then alleges, without explanation, that Saxon's furnishing of the foreclosure information to the CRAs is "inaccurate and misleading." (<u>Id.</u> ¶ 27.) With respect to her claims arising under § 1681s–2(b), Plaintiff states that she "filed a formal written dispute with each of the three major credit bureaus contesting the derogatory information furnished by Saxon." (<u>Id.</u> ¶ 15.) In response to her written dispute, Plaintiff claims that the CRAs responded "that Saxon had allegedly investigated and verified its claim so that the derogatory information would remain on plaintiff's credit reports." (<u>Id.</u> ¶ 18.) Plaintiff also asserts that she wrote directly to Saxon who did not timely respond to her request. (<u>Id.</u> ¶¶ 19-20.)

As a preliminary matter, Plaintiff's first and fourth claims for relief (willful and negligent failure to validate, respectively) are premised on Saxon's alleged failure to respond within thirty days to Plaintiff's direct written requests for information or validation. As stated above, a furnisher's duties under § 1681s-2(b) are only triggered by notice from a CRA, not a consumer. See Copley v. Fairbank, Civil Action No. 2:10-cv-01371, 2011 WL 2421024, at *2 (S.D.W. Va. June 13, 2011) ("[A] creditor's duties under § 1681s-2(b) are triggered by receipt of notice from a credit reporting agency of a credit dispute. Whether the [creditor] received notice from any other source, such as [a] Plaintiff, for example, is irrelevant for the purposes of satisfying the FCRA's notice requirement." (alteration original)(internal quotation marks omitted)); Peasley v. Verizon Wireless (VAW) LLC, 364 F. Supp. 2d 1198, 1200 (S.D. Cal. 2005) ("Courts have consistently held that for the duty imposed by § 1681s-2(b) to be triggered, the furnisher of information must have received notice of the dispute from a consumer reporting agency, not from the consumer."). Because Plaintiff's direct notice to Saxon did not trigger any duty enforceable by a private right of action under § 1681s-2(b), Plaintiff's first and fourth claims must be dismissed.

Plaintiff's second and third causes of action (willful and negligent misrepresentation, respectively) are also subject to dismissal. Although Plaintiff alleges that she made a written demand on the CRAs, she also alleges that those agencies reported that Saxon "allegedly investigated and verified its claim." (Compl. (Doc. 5) ¶ 18.)  Plaintiff does not allege a single fact detailing how or why Saxon's investigation was unreasonable. The Complaint alleges Defendants: (1) "inaccurately claimed a 'foreclosure' proceedings [sic] against plaintiff," (id. ¶ 13), and (2) "to support Saxon's claim of foreclosure and/or foreclosure proceedings." (Id. ¶ 32.) In view of Plaintiff's admission that proceedings were instituted in 2007, the absence of any information suggesting the foreclosure proceeding was without basis and the absence of any allegation that the reporting of foreclosure was not based on the fact that the foreclosure proceeding was instituted[2] render Plaintiff's conclusory allegations of inaccurate information

_____

[2] Plaintiff's allegations are insufficient to establish that the foreclosure proceedings were instituted improperly. Plaintiff suggests as much with the allegations that she communicated to Saxon about the pending sale (Compl. (Doc. 5) ¶ 8), but these allegations do not establish that Plaintiff was in compliance with the terms of the debt instrument. Furthermore, Plaintiff's argument that a "foreclosure" is limited to the transfer of title to the mortgagee (Pl.'s Resp. in Opp'n to Mot. to Dismiss ("Pl.'s Resp.") (Doc. 18) at 10) is not persuasive, as Plaintiff's own definition describes foreclosure as a "process," and there is no dispute a foreclosure action was initiated.

insufficient to state a claim. Furthermore, although Plaintiff makes the conclusory assertion that Saxon had an affirmative duty to reasonably investigate her written dispute and failed to do so, the Complaint fails to assert a single fact rendering such conclusion plausible.[3] More fundamentally, Plaintiff fails to clarify why Saxon reporting the foreclosure proceeding runs contrary to the FCRA. Plaintiff essentially alleges that Saxon initiated a foreclosure proceeding against her and then Saxon furnished the incidence of the foreclosure to the CRAs. Plaintiff has failed to detail to this court the impropriety of such actions attributable to either Defendant. See Ogbon v. Beneficial Credit Servs., Inc., No. 10 CV 03760 GBD, 2011 WL 347222, at *3 (S.D.N.Y. Feb. 1, 2011)("The Complaint also fails to allege facts demonstrating that any of the Defendants furnished fraudulent information about Plaintiff's account or . . . subsequently engaged in conduct inconsistent with the requirements of 15 U.S.C. § 1681s-2(b)(1)." (citation omitted)). For the reasons stated above, Plaintiff's FCRA claims are subject to dismissal.

---

[3] Plaintiff further does not allege that the CRAs actually contacted Saxon. However, this fact can be inferred from Plaintiff's claim that the CRAs responded to Plaintiff that Saxon had investigated Plaintiff's claim. (See Compl. (Doc. 5) ¶ 18.)

**D.** __Request to Amend__

In her response brief to Defendants' motion to dismiss, Plaintiff requests "leave to conduct preliminary discovery to amend her Complaint . . . ." (Pl.'s Resp. (Doc. 18) at 15.) Plaintiff states that such discovery would allow her to supplement several of her state law claims and potentially add another defendant.

This court will decline Plaintiff's request for amendment. Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Courts are instructed to "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "unless 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" Steinburg v. Chesterfield Cnty. Planning Comm'n, 527 F.3d 377, 390 (4th Cir. 2008)(quoting Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006)).

As a procedural matter, a concluding page in a response brief is not the proper posture to bring a motion to amend. See Alston v. Becton, Dickinson & Co., No. 1:12CV452, 2013 WL 4539634, at *5 (M.D.N.C. Aug. 27, 2013). Moreover, the Middle District's Local Rules require a moving party to "attach the

proposed amended pleading to the motion." LR 15.1; see U.S. ex

rel. Rostholder v. Omnicare, Inc., 745 F.3d 694, 703 (4th Cir.),

petition for cert. filed, 82 U.S.L.W. 3711 (U.S. May 22,

2014)(No. 13-1411)(holding a district court did not abuse its

discretion to deny leave to file an amended complaint where the

moving party failed to comply with a local rule requiring a

plaintiff attach the proposed amended pleading to a motion to

amend). With regard to the substance of Plaintiff's proposed

amendment, Plaintiff has failed to forecast any factual

allegations[4] curing the deficiencies in her FCRA claims. Robinson

v. Pepsi Bottling Grp., No. 1:13CV729, 2014 WL 2048127, at *4

(M.D.N.C. May 19, 2014)("In the current request, [plaintiff] has

not filed a proposed amended complaint that cures the defects

noted, nor has she even forecasted any factual or other

allegation to warrant further delay or denial of the motion to

---

[4] Plaintiff alleges, without stating any facts which would
support her conclusion, that Defendants erroneously reported a
foreclosure. Plaintiff apparently had some access to the
reported information since she alleges it is erroneous. Nothing
about the Complaint suggests amendments or discovery would add
any relevant facts to the pleadings. Most significantly,
Plaintiff's attempt to limit "foreclosure" to the sole act of a
title transfer to the mortgagee indicates an amendment would be
futile. As Plaintiff alleges, Defendants reported that a
foreclosure occurred and/or that foreclosure proceedings had
been initiated. (Compl. (Doc. 5) ¶¶ 13, 51.) Other than a
citation to Black's Law Dictionary, Plaintiff does not explain
or allege how Defendants reporting was not accurate. This court
finds that any amendment would be futile.

dismiss . . . . Consequently, [plaintiff's] request for further amendment will be denied.").

For the foregoing reasons, Plaintiff's motion to amend will be denied.

### E.    **Supplemental Jurisdiction**

Finally, this court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009)(citing 28 U.S.C. § 1367(c)). On the alleged facts of this case, this court finds Plaintiff's state law claims are more properly decided in state court. See Waybright v. Frederick Cnty., Md., 528 F.3d 199, 209 (4th Cir. 2008)("With all its federal questions gone, there may be the authority to keep it in federal court under 28 U.S.C. §§ 1367(a) and 1441(c) (2000), but there is no good reason to do so."). Although, at first glance, Plaintiff's state law claims appear intertwined with her FCRA claims, upon closer review, a determination of her state law claims necessarily implicates several areas of complex state law best resolved by the North Carolina courts. For instance, the lynchpin of Plaintiff's claims against Ocwen requires a resolution of Plaintiff's alter

ego claims under North Carolina corporate law. Moreover, to the extent Plaintiff is attempting to challenge the initial propriety of the foreclosure proceeding rather than the reporting of the foreclosure on her credit reports, such resolution will hinge on state law. Therefore, based on considerations of comity and pragmatism, this court will decline to exercise supplemental jurisdiction.

## IV. <u>CONCLUSION</u>

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendants' Motions (Docs. 8, 15) are **GRANTED** with respect to Plaintiff's claims under the FCRA (listed as causes of action one through four in Plaintiff's Complaint) and that this case is **DISMISSED.**

**IT IS FURTHER ORDERED** that Plaintiff's request for leave to amend or conduct discovery (Doc. 18) is **DENIED.**

**IT IS FURTHER ORDERED** that this court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and those claims are **REMANDED** to the Durham County Superior Court of the State of North Carolina for further proceedings. A certified copy of this Order shall be mailed by the Clerk to the Clerk of Durham County Superior Court.

A Judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

This the 26th day of August, 2014.

_____
United States District Judge